UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL FOOD GROUP, INC.,

               Civil Case No. 17-cv-13686
  Plaintiff,           Honorable Linda V. Parker

v.

GREAT HOST INTERNATIONAL, INC.
d/b/a ANDALUCIA NUTS,

  Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, TRANSFER, OR STAY (ECF NO. 16)

Plaintiff National Food Group, Inc. ("NFG") initiated this declaratory judgment action against Defendant Great Host International, Inc. d/b/a Andalucia Nuts ("Andalucia") on November 13, 2017. (ECF No. 1.) NFG requests this Court to declare the alleged Sales Contract between it and Andalucia invalid. Presently before the Court is Andalucia's motion to dismiss pursuant to 28 U.S.C. § 2201, or to transfer pursuant to 28 U.S.C. § 1404(a), filed March 22, 2018. (ECF No. 16.) The motion has been fully briefed. Finding the legal arguments sufficiently presented in the parties' brief, the Court is dispensing with oral arguments pursuant to L.R. 7.1(f)(2). For the reasons that follow, the Court grants Andalucia's motion.

## I. Factual and Procedural History

NFG is a wholesale food distributor with its principal place of business in Novi, Michigan. (ECF No. 1 at Pg ID 2.) Andalucia is a producer of nut-based foods with its principal place of business in Houston, Texas. (*Id*.) While bidding on a contract to supply peanut butter to the Texas Department of Corrections ("TDOC"), NFG began discussions with Andalucia to supply peanut butter. (*Id.* at Pg ID 2.) According to NFG, the two discussed price, quantity, delivery, and the United States Department of Agriculture ("USDA") stamping and grading. (*Id*.) After NFG notified Andalucia that TDOC accepted NFG's bid, Andalucia requested NFG to complete a credit application, which a NFG officer or representative, Scott Kamen, completed and executed on July 27, 2017. (ECF No. 16-6.) The credit application contained a forum selection clause that required all disputes to be filed in a Texas federal or state court. (*Id*.) Specifically, the clause stated: "Any suit or legal proceeding relating to this Application or the matters contemplated by this Agreement shall be brought in the state or federal courts sitting in Houston, Texas, and the Applicant hereby waives any claims or defense that such forum is not convenient or proper." (*Id.*)

On August 31, 2017, NFG sent Andalucia a purchase order for five orders of 1,440 cases of peanut butter ("August 31 Purchase Order"). (ECF No. 19-2.) On September 13, 2017, NFG sent Andalucia an additional purchase order for two

orders of peanut butter, one case of 464 and another case of 1,440 ("September 13 Purchase Order"). (ECF No. 19-5.) Each purchase order contained the following: "All purchases of goods and services by National Food Group, Inc., are subject to the Terms and Conditions of Purchase located at http://www.nationalfoodgroup.com/terms-of-purchase." (ECF Nos. 19-2 & 19-5.) Section 7 of the Terms and Conditions of Purchase stated:

> Purchaser may, at anytime, make changes to the Order, and Seller shall accommodate such request, provided Purchaser shall pay any additional reasonable costs of Seller by reason of any change. Any claim by Seller for a change pursuant to this Section as a result of the Purchaser's change must be asserted in writing within ten (10) days from the date of receipt by Seller of Purchaser's notification of any change. Purchaser will have the right to verify all claims hereunder by auditing relevant records of Seller. If Purchaser does not agree to pay such additional charges, the Purchaser may, at its option, proceed with the Purchase Order in the form previously provided to the Seller or cancel the Purchase Order without further liability to the Seller, and shall notify the Seller accordingly. If Purchaser agrees to additional charges as provided in this Section, Seller agrees to proceed with the Purchase Order as changed under this Section 7.

(ECF No. 16-22 at Pg ID 229-30; ECF No. 19-3 at Pg ID 281.) Finally, the Terms and Conditions of Purchase provided that "[t]he Agreement, these Terms and Conditions and the relationship between the parties shall be governed by the law of the State of Michigan, USA, without giving effect to any choice or conflict of law provision or rule (whether of the State of Michigan or any other jurisdiction) that

would cause the application of the law of any jurisdiction other than the State of Michigan shall be the exclusive jurisdiction for all disputes. The Oakland County Circuit Court or the Federal District Court for the Eastern District of Michigan is a convenient venue for both parties." (ECF No. 16-22 at Pg ID 235.)

On September 5, 2017, Andalucia emailed NFG a "Sales Contract" that contained Andalucia's terms for supplying peanut butter. (ECF No. 1 at Pg ID 3.) The Sales Contract was dated September 5, 2017 and provided that Andalucia would provide NFG 1,900,050 pounds of peanut butter-creamy-USDA stamped between September 2017 and August 2018. (ECF No. 16-5.) It estimated the price of the peanut butter to be $1,672,044.00. (*Id.*) The Sales Contract also contained the following remarks: "All chargers outside (exporter's country) on buyer's account"; "minimum order/pull 1440 cases"; "load pulls: 4-8 per month"; "buyer responsible for 3 month supply of packaging material"; "USDA inspection/stamp fee is to Buyer's account"; "itemized receipt for the USDA inspection to be provided with invoice"; and "delays in pick ups and pulls may result in upcharge of 3-5 cents/lb monthly." It also included a note that stated, "[q]uantity can be +/- 10%." (*Id.*)

On September 11, 2017, NFG representative, Christina Morianti, executed the Sales Contract and indicated that the quantity note needed clarification. (ECF No. 16-11 at Pg ID 130-33.) NFG alleges that Andalucia never provided

4

clarification for the intended meaning of "quantity can be +/- 10%," and, therefore, the parties never reached a meeting of the minds. (ECF No. 1 at Pg ID 3.) However, in a September 11, 2017 email, Andalucia responded to NFG's concern and expressed that the language was standard in all contracts and not a concern for NFG. (ECF No. 19-5.) In the same email thread, Ms. Morianti responded, "okay." (*Id.*) After the email exchange, between September 11, 2017 and September 18, 2017, Ms. Morianti emailed Andalucia to check on the status of the previous orders. (ECF No. 16-6 at Pg ID 298.)

On September 19, 2017, TDOC canceled its contract with NFG. (ECF No. 1 at Pg ID 4.) NFG immediately notified Andalucia, and on September 29, 2017, NFG informed Andalucia that it was canceling the August 31 and September 13 Purchase Orders. (*Id.*) NFG based its cancellation on the Terms and Conditions of Purchase referenced in the purchase orders. (*Id.*; ECF No. 19-3 at Pg ID 281.) From there, the parties began settlement negotiations for the peanut butter Andalucia produced prior to the cancellation. (ECF No. 16-4.)

On October 6, 2017, NFG sent Andalucia a repudiation letter, indicating there was never an agreement to purchase peanut butter between the parties because Andalucia never signed the agreement. (ECF No. 16-7.) On October 20, 2017, Andalucia sent NFG a demand letter, stating that the repudiation letter constituted grounds for insecurity under the Texas Business and Commerce Code.

5

(ECF No. 16-8.)  The demand letter also requested adequate assurance of performance under the Sales Contract by October 27, 2017.  (*Id.*)  On October 30, 2017, NFG responded to Andalucia's demand letter and reemphasized there was no agreement between the parties, as well as informed Andalucia that it was prepared to defend its position in the Eastern District of Michigan, pursuant to the Terms and Conditions of Purchase.  (ECF No. 16-18 at Pg ID 182-84.)  From November 1, 2017 through November 10, 2017, the parties continued to discuss settlement.  (ECF Nos. 16-15 at Pg ID 153-54; ECF No. 16-17 at Pg ID 180.)

NFG contends that despite there being no agreement between the parties, Andalucia claims that NFG is liable under the Sales Contract.  As such, on November 13, 2017, NFG initiated this declaratory judgment action against Andalucia in this district.  (ECF No. 1.)  Thereafter, on November 20, 2017, Andalucia initiated its own lawsuit in the District Court of Harris County, Texas.  (ECF No. 16-3.)  Andalucia's four-count complaint was for (1) suit on account under T.R.C.P. 185, (2) statutory repudiation of contract, (3) common law breach of contract, and (4) promissory estoppel.  (*Id.*)  The allegations arise out of the same transaction that is before this Court.  On December 27, 2017, NFG removed the Texas state case to the Southern District of Texas, based on diversity jurisdiction.  (*Great Host Int'l Inc., d/b/a Andalucia Nuts v. National Food Group, Inc.*, No. 18-cv-11163, ECF No. 1 at Pg ID 1-5.)  In the Texas case, NFG filed a

6

motion to dismiss, or to transfer venue to the Eastern District of Michigan on January 2, 2018. (ECF No. 16-19.) NFG also sought transfer and dismissal based on the first-to-file rule. (*Id.*) On April 11, 2018, the Southern District of Texas granted NFG's motion and, on April 12, 2018, transferred the case to this court. (*Great Host Int'l Inc., d/b/a Andalucia Nuts v. National Food Group, Inc.*, No. 18-cv-11163, ECF Nos. 1 & 2.) However, the Texas court reserved the issue of proper venue for this Court, stating, "[w]hether the circumstances alleged by [Andalucia] should prevent consolidation or merit a return to this Court are proper matters for the Michigan court to decide." (*Great Host Int'l Inc., d/b/a Andalucia Nuts v. National Food Group, Inc.*, No. 18-cv-11163, ECF No. 2 at Pg ID 52.)

Based on the forum selection clause in the credit application, on March 22, 2018, Andalucia filed the instant motion to dismiss or transfer the case. (ECF No. 16.) NFG filed its response on April 9, 2018, and Andalucia filed a reply on April 17, 2018. (ECF Nos. 19 & 20.) NFG takes the position that venue is proper pursuant to the Terms and Conditions of Purchase in the purchase orders.

**II.    Applicable Law & Analysis**

Andalucia advances four arguments as to why this case should be dismissed or transferred to the Southern District of Texas. First, Andalucia contends that this Court should decline jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, because NFG filed this action in bad faith and in anticipation of

7

Andalucia, the proper plaintiff, filing its own lawsuit in Texas. Second, Andalucia seeks transfer based on the credit application's forum selection clause. Alternatively, Andalucia requests transfer pursuant to § 1404(a). Finally, Andalucia requests that the Court disregard the first-to-file rule because of NFG's bad faith, anticipatory filing.

Contrarily, NFG contends that the Court should apply the forum selection clause in the Terms and Conditions of Purchase because Andalucia consented to this venue and waived any defense of forum inconvenience. Additionally, NFG advocates for the application of the first-to-file rule because its lawsuit was not a bad faith, anticipatory filing as the Eastern District of Michigan is the proper venue according to the Terms and Conditions of Purchase.

### A. Declaratory Judgment Act, 28 U.S.C. § 2201

Under the Declaratory Judgment Act, a federal court can "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The exercise of jurisdiction under the Federal Declaratory Judgment Act is not mandatory. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 419, 494 (1942); *Travelers Indem. Co. v. Bowling Green Prof. Assoc., PLC*, 495 F.3d 266, 271 (6th Cir. 2007) (finding that the district court abused its discretion in exercising jurisdiction over

declaratory judgment action). Several considerations are relevant to a district court's decision to adjudicate a declaratory judgment action:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

*Bowling Green Prof'l Assocs.*, 495 F.3d at 271 (quoting *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984)).

The first and second factors are "closely related" and are often considered together. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008). Andalucia argues that this action would not settle the controversy because it has extra-contractual claims against NFG for promissory estoppel, and a judgment in favor of NFG would not resolve its claims. Further, Andalucia contends that this litigation would not serve a useful purpose in clarifying the legal relations because NFG is not under the threat of any future harm, including any future litigation or damages. (ECF No. 16-1 at Pg ID 68.) Andalucia directs the Court to *AmSouth*

9

*Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004), which distinguishes the types of cases where exercising jurisdiction for declaratory actions is appropriate: "situations where some uncertainty beyond the possibility of litigation exists (i.e., trademark infringement) and those where the injury is already complete." *Id.* at 787.

In *AmSouth*, receivers were seeking to recover money Martin Frankel embezzled from insurance companies, using AmSouth bank accounts. AmSouth filed a declaratory judgment action in federal court. The receivers, then, in turn, filed a state court action. The Sixth Circuit stated that "[t]he 'useful purpose' served by the declaratory judgment action is the clarification of legal duties for the future, rather than the past harm a coercive tort action is aimed at redressing." *Id.* at 786. The Sixth Circuit noted that the receivers' claim fell in the second category of cases because the banks did not allege any present or continual wrongdoing that would require immediate clarification of the parties' legal relations. *Id.* at 789. Specifically, the Court held that "[t]he historical incidents giving rise to liability are finished," and there was a pending coercive action capable of resolving the dispute. *Id.* As such, Andalucia takes the position that NFG is not seeking protection from a continuing violation or on-going wrongdoing that requires immediate clarification.

NFG, however, contends that this declaratory action can settle this controversy because Andalucia's claims arise out the same transaction or

occurrence; therefore, making Andalucia's claims compulsory counterclaims. *See* Fed. R. Civ. P. 13(a) ("A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. . . ."). NFG simply states that a declaratory judgment action serves a useful purpose in clarifying whether a contract exists and relies on *Innovation Ventures, LLC v. CB Distributions*, 652 F. Supp. 2d 841, 844 (E.D. Mich. 2009).

The Court agrees that it can settle the controversy because Andalucia's claims would be compulsory. Additionally, the second action Andalucia references has since been transferred and is currently before this Court, *Great Host Int'l Inc., d/b/a Andalucia Nuts v. National Food Group, Inc.*, 18-cv-11163, and could be consolidated into one action. As to clarifying the legal relations, NFG has not shown that it faces a threat of future harm or damages that require immediate clarification. NFG relies on *Innovation Ventures* for the proposition that a declaratory judgment action serves a useful purpose in clarifying whether a contract exists. However, the court recognized in that case that it was clarifying the legal relations for the "future." *See Innovation Ventures*, 652 F. Supp. 2d at 844. The Court is unaware of any future harm or damages NFG faces pertaining to this litigation. Additionally, the Court finds it troublesome that NFG would file this declaratory judgment action rather than waiting for Andalucia to file its own

11

suit, especially given there was no indication that there was any significant delay in Andalucia filing its own lawsuit. Although the first factor weighs in favor of retaining jurisdiction, the second factor favors dismissal.

As to the third factor, Andalucia asserts that NFG has used this action for procedural fencing. According to Andalucia, NFG was aware Andalucia intended to file suit in Texas, and on November 10, 2017, NFG agreed to continue settlement negotiations before litigation. (ECF No. 16-1 at Pg ID 71.) Further, Andalucia contends that NFG misled it into believing they were negotiating a settlement in good faith. Andalucia contends that NFG stated that it was "going" to file in Michigan but, instead, already had filed the lawsuit.

However, NFG believes this matter is properly before this Court pursuant to the Terms and Conditions of Purchase. NFG contends it did not mislead Andalucia to gain an advantage on the venue. In fact, in a letter dated October 30, 2017, NFG informed Andalucia that if a lawsuit was filed, it would be filed in the Eastern District of Michigan. (ECF No. 19 at Pg ID 257; ECF No. 19-9 at Pg ID 321.) Despite Andalucia's protestations, the record does not support that NFG engaged in bad faith settlement negotiations. However, there does appear to be some procedural fencing. The Court finds the timing of NFG's lawsuit concerning. A significant amount of time had not elapsed since Andalucia

contacted NFG regarding the alleged breach and potential resolution of the dispute to warrant NFG's lawsuit. This factor weighs in favor of dismissal.

The fourth and fifth factors are moot. Andalucia contends that its coercive Texas action weighs heavily in the dismissal of this action because it is a more effective alternate remedy. However, the state matter was removed to the Texas federal court and has since been transferred to this Court. Although the Texas action has been transferred to this Court, the only basis for transfer was because of the first-to-file rule, which the Southern District of Texas reserved for this Court. These factors are neutral.

Although the Court is well-positioned to resolve the parties' dispute, including Andalucia's compulsory counterclaims, finding evidence of procedural fencing and that this action will not clarify any future legal relations between the parties, the Court will not exercise its discretion and retain jurisdiction pursuant to § 2201. *See AmSouth Bank*, 386 F.3d at 787 (Declaratory actions are appropriate in "situations where some uncertainty beyond the possibility of litigation exists.") Therefore, this case is dismissed.

However, the Court's analysis will not end here because the Southern District of Texas did not resolve the first-to-file issue, and the Texas case has now been transferred to this Court based on the first-to-file rule. Although dismissal of

this action will render the first-to-file rule moot, nonetheless, the Court will address it.

### B. First-to-File Rule

Andalucia contends that this Court should abandon the first-to-file rule because NFG filed this action in bad faith and in anticipation of Andalucia filing its own clam. The first-to-file rule manages overlapping litigation and provides that when the same parties file suits concerning the same issues in different district courts, the court with the first action should proceed to judgment. *See Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). The rule encourages "comity among federal courts" and minimizes piecemeal litigation and conflicting results. *Id.*

The Sixth Circuit has instructed courts to look at the chronology of events, the similarity of the parties, and the similarity of the issues at stake when applying the first-to-file rule. *Id.* Next, the court must consider any equitable considerations such as "inequitable conduct, bad faith, anticipatory suits, [or] forum shopping." *Id.* The three elements are met. NFG filed its complaint on November 13, 2017, and Andalucia filed its complaint on November 20, 2017. The parties and the issues are identical.

Next, considering the equitable considerations, this is a classic case of an anticipatory lawsuit. *See id* at 792 ("[A classic suit is] where one party has filed an

14

anticipatory suit (usually a declaratory judgment action) in a preferred forum."). For the reasons stated in Section A, there was no reason for NFG to file this declaratory judgment action other than to get its preferred forum and in anticipation of Andalucia's lawsuit. Although NFG contends venue is proper pursuant to the Terms and Conditions of Purchase, its position on proper venue does not warrant the filing of this action. The most appropriate course of action for NFG would have been to file a motion to transfer, as it did. However, NFG had an advantage because it had already filed this lawsuit. Therefore, the Southern District of Texas transferred this action to this Court, in light of this action being filed first. NFG's actions prevented Andalucia from having its choice of forum[1]. Accordingly, because NFG filed an anticipatory action, the Court finds that the first-to-file rule is inapplicable. For the reasons stated in Section A, Andalucia's motion is granted, and this case is closed and dismissed.

## III. Conclusion

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss, Transfer, or Stay (ECF No. 16) is **GRANTED**.

---

[1] The Court is aware of the parties' dispute relating to the forum selection clauses.

**IT IS FURTHER ORDERED** that this case is **CLOSED** and **DISMISSED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: July 16, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 16, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury  
Case Manager